1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11

12   MICHAEL BOUTTA,                          Case No.  11-3031 WHO (PR)

              Petitioner,
13
          v.
                                              **ORDER DENYING PETITION FOR**
14                                            **WRIT OF HABEAS CORPUS**

15   GARY SWARTHOUT, Warden,

16            Respondent.

17

18

19                             **INTRODUCTION**

20         Petitioner Michael Boutta seeks federal habeas relief from his state convictions.

21   For the reasons set forth below, the petition for such relief is DENIED.

22                              **BACKGROUND**

23         In 2007, an Alameda County Superior Court jury found Boutta guilty of forcible

24   rape.  He received a sentence of 90 years-to-life in state prison.  He appealed, lost, sought a

25   state writ of habeas corpus, and lost again.  This federal habeas petition followed.

26         Evidence presented at trial showed that in 2006, Boutta raped S. Doe, a 64 year-old

27   woman.  (Ans., Ex. E at 3 (State Appellate Opinion, *People v. Boutta*, No. A120292, 2009

28   WL 4878631 (Cal. Court. App. Dec. 17, 2009) (unpublished).)  Boutta's defense, as he told

the police before he was read his *Miranda* rights and as he testified at trial, was that he and Doe had consensual sex.  During his testimony, he admitted he had twice before been convicted of rape.  (*Id.* at 10-11.)  Evidence of Boutta's guilt included the victim's testimony, testimony of two persons who heard the victim assert that she was raped, and testimony from a physician's assistant that (a) Doe had an abrasion on her nose, some bruises on her arm and tailbone, and (b) the "injuries in Doe's vaginal area were consistent with her having been raped."  (*Id.* at 9).

As grounds for federal habeas relief, Boutta alleges that (1) the admission of statements he made to police violated his *Miranda* rights under the Fifth Amendment; (2) the admission of, and the cross-examination regarding, his prior convictions violated the Fifth Amendment; and (3) his lawyer rendered ineffective assistance.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "Under the 'unreasonable application' clause, a federal habeas court may grant the

2    writ if the state court identifies the correct governing legal principle from [the] Court's

3    decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

4    413.  "[A] federal habeas court may not issue the writ simply because that court concludes

5    in its independent judgment that the relevant state-court decision applied clearly

6    established federal law erroneously or incorrectly.  Rather, that application must also be

7    unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application"

8    inquiry should ask whether the state court's application of clearly established federal law

9    was "objectively unreasonable." *Id.* at 409.

10    When presented with a state court decision that is unaccompanied by a rationale for

11    its conclusions, a federal court must conduct an independent review of the record to

12    determine whether the state-court decision is objectively reasonable.  *See Delgado v.*

13    *Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This "[i]ndependent review is not a *de novo*

14    review of the constitutional issue, but rather, the only method by which [a federal court]

15    can determine whether a silent state court decision is objectively unreasonable." *See*

16    *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "[W]here a state court's decision

17    is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

18    showing there was no reasonable basis for the state court to deny relief." *See Harrington*

19    *v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

### I.    Admission of Evidence of Police Interrogation

22    Boutta claims that the trial court violated his Fifth Amendment right against self-

23    incrimination by allowing the introduction of evidence of the police interrogation.   More

24    specifically, he claims that the police failed to give *Miranda* warnings prior to questioning

25    him, rendering inadmissible the confession to police later presented to the jury.

26    The relevant facts belie Boutta's claim.  At trial, Boutta's defense counsel was the

27    first to ask him questions about his statements to police:

28    
3

United States District Court
Northern District of California

1    [Defense counsel] Q:  Were you stopped by the police after that day?

2    [Boutta] A:  I think it was about two days later, yes.

3    Q:      Where was that?

4    A:      Across the street from my house. The gas station at the corner of Mowry

5            and Fremont, I believe.

6    Q:      Did they ask you to come down to the police station?

7    A:      Yes, they did.  Actually, they detained me there for a second and I think it

8            was Detective Roberts, if I'm not mistaken.  They came down and said that
             they wanted to talk to me.  They had an allegation of something that was

9            going on, and so they said it was not an arrest.  I said okay.  So I kind of

10           wondered what was going on.  He said, "Would you mind coming down to
             the police station so we could talk?"  And I'm going like, "Sure.  Why not?"

11

12   Q:      Before that happened did they search your car?

13   A:      Well, yes. The detective went into and took some pictures of the inside the
             car, went in the back of the truck and opened it and took out a blue tarp.

14           Yeah.  They searched the car.

15   Q:      But you — you drove down to the police station?

16   A:      I drove down to the police station voluntarily.

17   Q:      And then did they interrogate you, question you?

18   A:      Yes, they did.

19   (Ans., Ex. B, Vol. 3 at 212–14.)  When Boutta admitted during the interrogation that he

20   had sex with the victim, he was arrested.  (*Id.* at 214-215.)  At trial, Boutta testified that the

21   interrogation lasted for about two hours, and that no more than two police officers were

22   present at any time.  (*Id.* at 214.)

23          The California Court of Appeal summarized the prosecutor's cross-examination of

24   Boutta about the interrogation, during which part of the police audiorecording was played

25   for the jury, as follows:

26

27

28                                              4

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Some portions of a police interview in which [Boutta] said he did not have sex with Doe were played for the jury. [Boutta] admitted he lied to the police when he said he did not have sex with Doe. He admitted he also lied when he told the police that he gave Doe his tarp and left, and that Doe returned the tarp to him when he ran into her the next day. He also admitted he told the police that Doe never got in his car and that he did not drive her anywhere. He also lied to the police when he said he was nowhere near the eucalyptus grove. [Boutta] testified that he later admitted to the police that he gave Doe a ride. The prosecutor asked, "is the sex that you had with her consensual? Is that your position?" [Boutta] responded, "I believe so, yes." The prosecutor asked, "Or is she just another victim of a serial rapist?" [Boutta] responded, "No, sir."
>
> On redirect examination, [Boutta] testified he did not know his initial statements to the police were being recorded. After learning his statements were being recorded, he changed his statement. He explained that in his experience, if statements are not being recorded, the police "can always take things out of proportion . . . . That's why I didn't say anything until afterwards." He said he told the police the truth in the end, i.e., that he had consensual sex with Doe.

(Ans., Ex. E at 11–12.)

Boutta raised this *Miranda* issue to the state courts only on collateral review. The state supreme court, summarily and without citation, denied the petition.[i] (Ans., Ex. K.) This Court must presume that the state supreme court's summary disposition was an adjudication of the merits of all claims raised in the petition. *Richter*, 131 S. Ct. at 784-85. Because it was a summary disposition, this Court must conduct an independent review to determine whether the state court's decision was "objectively reasonable." *See Delgado*, 223 F.3d at 982.

A person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements he makes can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. *Id.* The remedy for a

violation of these requirements is the suppression, at the subsequent trial, of the statements

made incriminating the defendant in the crime about which he was questioned. *Id.* at 479.

However, *Miranda* protections are triggered "only where there has been such a

restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429

U.S. 492, 495 (1977).  Whether a person is in "custody or otherwise deprived of his

freedom of action in any significant way," *Miranda*, 384 U.S. at 444, is answered by

reviewing the totality of facts involved at the time of the alleged restraint.  *U.S. v.*

*Redlightning*, 624 F.3d 1090, 1103 (9th Cir. 2010) (citing *U.S. v. Hayden*, 260 F.3d 1062,

1066 (9th Cir. 2001)).  Relevant to this inquiry are (1) the language used by the officer to

summon the individual, (2) the extent to which he or she is confronted with evidence of

guilt, (3) the physical circumstances of the interrogation, (4) the duration of the detention

and  (5) the degree of pressure applied to detain the individual.  *Id.*  Moreover, these

factors are not exhaustive, as other factors may be pertinent to, or even dispositive of, the

custody question.  *U.S. v. Bassignani*, 560 F.3d 989, 996 (9th Cir. 2009).  "Based upon a

review of all the pertinent facts, the court must determine whether a reasonable innocent

person in such circumstances would conclude that after brief questioning he or she would

not be free to leave."  *U.S. v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).

Applying these legal principles to this case, the Court concludes that the state

supreme court reasonably determined that Boutta was not in custody when he made his

pre-arrest statements to police.  The first factor (the summoning language) weighs in favor

of the state court's determination.  Boutta's own testimony shows that the police requested,

rather than demanded or ordered, his presence at the police station and that he was not

under arrest:

> They came down and said that they wanted to talk to me.  They had an
> allegation of something that was going on, and so they said it was not an
> arrest.  I said okay.  So I kind of wondered what was going on.  He said,
> 'Would you mind coming down to the police station so we could talk?"
> And I'm going like, 'Sure.  Why not?'

(Ans., Ex. B, Vol. 3 at 212.)  That this was an invitation and not an order is made clear by

United States District Court
Northern District of California

1    Boutta's later admission that he voluntarily went to the police station.  (*Id.* at 214.)

2         The second and third factors also support the state court's decision.  The record

3    shows that the police did not confront petitioner with evidence of his guilt.  Rather, the

4    officer informed petitioner that the police were conducting an investigation and wanted to

5    ask petitioner questions related to that investigation.  The third factor (the physical

6    circumstances of the investigation) weighs slightly in favor of petitioner, considering that

7    he was questioned at the police station.  The fourth factor (the length of the detention)

8    weighs in favor of the state court's decision.  A two-hour interrogation, which included his

9    pre- and post-arrest statements is not lengthy, or otherwise a sign of coercion or undue

10   pressure.  The fifth factor (the degree of pressure applied to detain the individual) weighs

11   in favor of the state's decision.  Boutta willingly went to the police station and was not

12   placed under arrest until he admitted that he had sex with the victim during the same time

13   that she says he raped her.  The record shows no indication of undue pressure or any

14   overbearing police methods used to elicit Boutta's recantation of his initial lie that he had

15   not had sex with the victim.

16        In sum, the record shows that Boutta was not in custody prior to the issuance of

17   *Miranda* warnings.  *See Mathiason*, 429 U.S. at 495.  There was no constitutional

18   violation.  The state court's decision was not objectively unreasonable and is entitled to

19   AEDPA deference.  Boutta's claim is DENIED.

20   **II.    Admission of Evidence of Prior Acts and Admissions**

21        Boutta claims that his Fifth Amendment right against self-incrimination was

22   violated when the trial court allowed the prosecutor to present evidence of his prior rape

23   convictions and to cross-examine him in detail about those crimes.  Petitioner raised no

24   objection at trial.

25        The state appellate court, sitting in direct review, rejected this claim because

26   petitioner waived his Fifth Amendment rights by testifying at trial:

27

28                                           7

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9

> Here, [Boutta] took the stand and denied forcing [S.] Doe to the ground and raping her.  He claimed they engaged in foreplay and had consensual sex. In light of this testimony, the facts relating to the rapes of Fern Doe and Elise Doe were relevant to impeach [Boutta]'s credibility as a witness, i.e., to show he was not being truthful when he stated the sex was consensual, and to show [Boutta]'s propensity to commit sexual offenses.  [Boutta] contends it is only the fact of a prior felony conviction, and not the circumstances that led to the conviction, that is admissible in impeaching a witness's credibility . . . The prosecutor's questions were permissible because they related to the "matter[s] to which [Boutta] testified expressly or impliedly on direct examination" and were "relevant to impeach his credibility as a witness." [Citation omitted.]   There was no [F]ifth [A]mendment violation.

10
(Ans., Ex. E at 15.)

11
Habeas relief is not warranted for four reasons.  First, the state appellate court is

12
correct that a defendant who chooses to testify on his own behalf runs the risk of having

13
his credibility impeached like any other witness, *Brown v. United States*, 356 U.S. 148,

14
154-55 (1958), and evidence of prior crimes may properly be used to draw inferences

15
about a witness's credibility, *see, e.g., Old Chief v. United States*, 519 U.S. 172, 176 n.2

16
(1997).

17
Second, habeas relief can be granted on this sort of claim only if there are no

18
permissible inferences a jury can draw from the evidence to find guilt.  *Jammal v. Van de*

19
*Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  In this case, it would be permissible for Boutta's

20
jury to infer that his prior convictions weighed against his credibility.

21
Third, Boutta's claim would fail even if the evidence were irrelevant or prejudicial.

22
"Although the [Supreme] Court has been clear that a writ should be issued when

23
constitutional errors have rendered the trial unfair (citation omitted), it "has not yet made a

24
clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

25
process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568

26
F.3d 1091, 1101 (9th Cir. 2009).  The California Court of Appeal did not reach a decision

27
that was contrary to, or involved an unreasonable application of, clearly established law.

28

United States District Court
Northern District of California

1    Finally, insofar as Boutta claims that the admission of this evidence violated his due

2    process rights to have character or propensity evidence excluded, his claim fails.  Because

3    the Supreme Court has reserved this issue as an "open question," the Ninth Circuit has held

4    that a petitioner's due process right concerning the admission of propensity evidence is not

5    clearly established for purposes of review under AEDPA.  *Alberni v. McDaniel*, 458 F.3d

6    860, 866-67 (9th Cir. 2006).

7    The state court's decision was reasonable and is entitled to AEDPA deference.

8    Accordingly, the claim is DENIED.

9    **III.    Assistance of Counsel**

10   Boutta claims that his defense counsel rendered ineffective assistance.  Specifically,

11   he contends that counsel failed to (A) object to the admission of his taped statements to

12   police, (B) raise a Fourth Amendment claim, and (C) provide effective assistance of

13   counsel by encouraging him to testify.  The state supreme court summarily denied the

14   habeas petition containing these claims.  (Ans., Ex. K.)  Accordingly, this Court must

15   conduct an independent review to determine whether the state court's decision was

16   "objectively reasonable."  *See Delgado*, 223 F.3d at 982.

17   Claims of ineffective assistance of counsel are examined under *Strickland v.*

18   *Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of

19   counsel, the petitioner must establish two factors.  First, he must establish that counsel's

20   performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

21   under prevailing professional norms, *id.* at 687-68, "not whether it deviated from best

22   practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S.

23   at 690 ).  "A court considering a claim of ineffective assistance must apply a 'strong

24   presumption' that counsel's representation was within the 'wide range' of reasonable

25   professional assistance."  *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).

26   Second, he must establish that he was prejudiced by counsel's deficient

27   performance, i.e., that "there is a reasonable probability that, but for counsel's

28

United States District Court
Northern District of California

9

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Id.* at 788 (quotation and citations omitted).  "The question [under § 2254(d)] is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### A.      Fifth Amendment Objection

This Court concluded above that Boutta has failed to show that his underlying *Miranda* claim has merit.  That failure dooms any attempt to show that an objection by counsel would have been successful.  Failure to raise a meritless objection is not grounds for establishing deficient performance or prejudice. *See, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).  In its independent review of the record, the Court determines that the state court's decision was not objectively unreasonable.  This claim is DENIED.

### B.      Fourth Amendment Objection

Boutta claims that counsel "never investigated to see weather [*sic*] his client was seized and deprived of his [F]ourth and [F]ifth [Amendment rights]." (Pet. at 11.)  This undetailed, conclusory claim must be denied because it does not meet the specifity requirements of *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  Also, Boutta's testimony that he voluntarily went to the police station voids any claim that he was illegally seized.  Counsel, then, had no reason to investigate this claim, and therefore did not render a deficient performance.  In its independent review of the record, the Court determines that

10

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the state court's decision was not objectively unreasonable.  This claim is DENIED.

2          **C.**    **Advising Boutta to Testify**

3        Boutta alleges that he also received ineffective assistance of counsel because his

4  lawyer encouraged him to testify, which allowed Boutta's prior rape convictions to be used

5  in cross-examination.[ii]

6        His counsel concluded, however, that the only available defense -- consent --

7  required Boutta to testify at trial.  (Pet., Part 2 at 25.)  The victim alleged Boutta raped her,

8  while Boutta countered that the two had had consensual sex.  There was no evidence to

9  support Boutta's "consent" defense other than Boutta's testimony.  In counsel's mind, there

10  was no other defense.  With Boutta's testimony, the case would hinge on credibility.

11  Under these circumstances, and with the evidence presented by the prosecution, defense

12  counsel's advice that Boutta should testify was a reasonable tactical decision well within

13  the wide range of reasonable professional assistance.

14        For the same reasons, Boutta has failed to show prejudice.  There was testimony

15  from the victim, corroborated by physical evidence and the testimony of the treating

16  physician's assistant, that Boutta raped her.  On such a record, Boutta cannot show a

17  reasonable probability that, absent counsel's alleged errors, the factfinder would have had a

18  reasonable doubt respecting guilt.  In sum, Boutta fails to show that there is no reasonable

19  argument that counsel did not satisfy *Strickland*'s deferential standard.  In its independent

20  review of the record, the Court determines that the state court's decision was not

21  objectively unreasonable.

22        Accordingly, all ineffective assistance of counsel claims are DENIED.

23                       **CONCLUSION**

24        The state court's adjudication of Boutta's claims did not result in decisions that were

25  contrary to, or involved an unreasonable application of, clearly established federal law, nor

26  did they result in decisions that were based on an unreasonable determination of the facts

27  in light of the evidence presented in the state court proceeding.  Accordingly, the petitionis

28                       11

United States District Court
Northern District of California

1   DENIED.

2          A certificate of appealability will not issue.  Reasonable jurists would not "find the

3   district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

4   *McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability

5   from the Ninth Circuit.

6          The Clerk shall enter judgment in favor of respondent and close the file.

7          **IT IS SO ORDERED.**

8   **Dated:**  August _16_, 2013



9                                                    WILLIAM H. ORRICK
10                                                   United States District Judge

11

12                                  **ENDNOTES**

13  [i] The very first court Boutta presented the first and third claims to was the state superior
14  court, which disposed of all claims on procedural grounds.  (Ans., Ex. I.)  Because that
    court disposed of the petition on procedural grounds, this Court will regard the state
15  supreme court's summary denial as the final disposition on the merits.

16  [ii] It is not clear that Boutta presents this claim for federal habeas review.  The Court
17  addresses it in an abundance of caution.

18

19

20

21

22

23

24

25

26

27

28                                          12